IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

IN RE:                                          *
                                                *
STONE'S COVE KITBAR OF              *        Case No. 17-10066-BFK
  BEL AIR, LLC                             *        Chapter 7
                                                *
        Debtor                             *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
McGILL DEVELOPMENT LIMITED      *
  PARTNERSHIP NO. 3                   *
                                                *
        Movant                            *
v.                                              *
                                                *
STONE'S COVE KITBAR OF              *
  BEL AIR, LLC                             *
and                                           *
H. JASON GOLD, TRUSTEE            *
                                                *
        Respondents                     *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MOTION FOR RELIEF FROM STAY
AND MEMORANDUM OF POINTS AND AUTHORITIES
(WITH RESPECT TO LEASE AGREEMENT BETWEEN
McGILL DEVELOPMENT LIMITED PARTNERSHIP NO. 3,
LANDLORD, AND STONE'S COVE KITBAR OF BELAIR, LLC, TENANT

        McGill Development Limited Partnership No. 3, Movant, by its undersigned

attorneys, moves this Court to lift the automatic stay to allow the Movant to terminate the

Bel Air Town Center Retail Lease between McGill Development Limited Partnership No.

3, as landlord, and Stone's Cove KitBar of Bel Air, LLC, as tenant, and to exercise its

state law and contractual rights to terminate the Lease and regain possession of the

Leased Premises, and respectfully represents:

1

Background

1.      On January 6, 2017 (the "Petition Date"), Stone's Cove Kitbar of Bel Air, LLC, the Debtor, filed a voluntary petition for relief in this court under Chapter 7 of Title 11 of the United States Code.

2.      H. Jason Gold (the "Chapter 7 Trustee") was duly appointed and continues to serve as the Chapter 7 trustee.

3.      This court has jurisdiction over the parties and over the issues raised by this Motion, in accordance with 28 U.S.C. §§ 157 and 1334, and in accordance with 11 U.S.C. § 105 and 362. This is a civil core proceeding arising under, or arising in or related to a case under, Title 11 of the United States Code, by which the Movant seeks to terminate the Lease between the parties, in which the estate of the Debtor also holds an interest, and to regain possession of the Leased Premises.

The Lease

4.      On or about July 29, 2014, McGill Development Limited Partnership No. 3 ("McGill"), as landlord, and Stone's Cove Kitbar of Bel Air, LLC (the "Debtor"), as tenant, entered into a Lease Agreement (the "Lease") whereby the Debtor agreed to lease approximately 5,500 square feet of space located in that commercial shopping center known as Bel Air Town Center, located at 588 Baltimore Pike, Bel Air, Maryland 21014 (the "Leased Premises") to operate a full service KitBar restaurant under the name of "Stone's Cove KitBar". A copy of the Lease is attached and marked as Exhibit 1 and incorporated by reference.

5.      The Lease commenced on April 25, 2016. The Lease provides for an initial term of ten years, with the option for two renewals of five years each.  The Lease provides for the payment of minimum rent due as follows: Zero dollars ($0.00) for the first rental

year (through April 30, 2017); $6,875.00 per month for the 13th through the 84th month of

the Lease (through April 30, 2023), and then $9,166.67 per month for the balance of the

Lease (through April 30, 2026). In addition to the minimum rent due, the Debtor is required

to pay McGill, as percentage rent, an amount equal to the amount by which five percent

of the gross sales made each rental year exceed the minimum rental paid, to be

determined on a quarterly basis.

6.      For the initial year of the Lease, which concludes on April 30, 2017, the

Debtor was not required to pay any minimum rent, just percentage rent, if applicable.

Based upon the Debtor's gross sales for the period from April 25, 2016 through July 31,

2016, the Debtor paid $5,000.28 to McGill as percentage rent.  Based upon the Debtor's

gross sales for the period from August 1, 2016 through October 31, 2016, the Debtor was

not required to pay percentage rent to McGill. To date, the Debtor has not provided the

report required under the Lease to determine the amount of percentage rent due for the

period from November 1, 2016 through January 6, 2017, and McGill is unable to ascertain

if any additional percentage rent is due.

7.      The Lease also requires the Debtor to pay to McGill its proportionate share

of common area and maintenance fees, taxes and insurance as additional monthly rent.

The January, 2017 fees have not been paid and $3,817.92 is due and owing to McGill on

account of this additional rent.

8.      The Debtor's Statement of Financial Affairs reflects that on January 5, 2017,

one day before the Petition Date, the Debtor sold "all assets" to Minuteman Capital, LLC

for the sum of $25,000.00. No further information was provided to determine what assets

were sold or how the value of the assets were determined. Further, the Debtor's

3

schedules reflect that its cash and bank accounts totaled "0" on the Petition Date, one day later, without any accounting for the $25,000.00 received[1].

9.      Since the Petition Date, some party has continued to operate a restaurant from the Leased Premises. Upon information and belief, the party operating from the Leased Premises is not the Debtor, as the Debtor's Schedule G reflects the Lease was "abandoned by Debtor," and the party operating is not the Chapter 7 Trustee, who has advised counsel that he has not sought approval to operate the business. McGill believes that Minuteman Capital, LLC or a related party (collectively "Minuteman") has operated the restaurant since the Petition Date and continues to operate from the Leased Premises and may be using the trade name and liquor license of the Debtor for its operations. Further, McGill has been advised that Minuteman is applying to Harford County Liquor Board to have the liquor license of the Debtor transferred to a third party.

10.      Cause exists to lift the automatic stay to allow McGill to terminate the lease and to proceed with its state law and contractual remedies to regain possession of the Leased Premises for the following reasons:

a.      The Leased Premises is being operated as a restaurant by a third party that is not the Debtor, that is not authorized by the Trustee, and that is not authorized by McGill. Absent relief from the automatic stay, McGill cannot proceed to evict the unauthorized occupant from the Leased Premises. The continued use of the Leased Premises by the unauthorized occupant creates a risk to McGill and the bankruptcy estate. Every time the unauthorized occupant opens the restaurant and allows patrons to

---

[1] The only reference in the papers filed by the Debtor to the monies paid after the sale was in the Statement of Financial Affairs, where it indicated a payment to JPS Law, PLLC in the amount of $14,500.00 on 1/6/17 for "services". There was nothing to indicate whether this payment was for antecedent debt, current services, or future services.

enter, there is a possibility of personal injury or other damages that could be asserted

against McGill, as Landlord, or the bankruptcy estate, as the Tenant. Further, it is unlikely

that the unauthorized occupant has obtained liability insurance as it does not have an

insurable interest in the Leased Premises.

       b.     The Lease is in default, in that prepetition rents are due for the

monthly CAM, taxes and insurance, and the Debtor has failed to provide the accounting

required under the Lease to determine the amount of the prepetition percentage rent due.

The Lease is in default, as the operations of the Debtor have ceased in violation of the

provision that requires that the Debtor remain open for a minimum of eight hours per day,

which has an adverse effect for the Lease as rents based upon a percentage of gross

sales.

       11.    Further, cause exists to lift the automatic stay in that the Bankruptcy Estate

is unable to provide the Movant with adequate protection as called for in 11 U.S.C. § 365.

Section 365(d)(3) pertains to non-residential leases and provides as follows:

> 3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (0 of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

       12.    In the instant case, the Lease requires the Debtor, and therefore the

Bankruptcy Estate, to operate its business each day for at least an eight hour period. Since

the Debtor ceased operations prior to the Petition Date and since the Bankruptcy Estate

5

is incapable of operating the business of the Debtor as required by section 365(d)(3), the Bankruptcy Estate in in breach of the its duties to McGill. Section 365(b)(2) has no application to the instant case. Given these facts, McGill's only remedy provided under the code is to request that the stay be lifted in order to terminate the Lease and regain possession of the Leased Premises.

13.      Further, as indicated above, the Debtor's schedules reflect that at the time of the filing, the Debtor did not have general liability insurance, nor do the schedules indicate that the Bankruptcy Estate has the financial resources to acquire the requisite insurance coverage. The absence of insurance places an added burden on McGill that was not contemplated by section 365 and, once again, the only remedy available to McGill is to request that the stay be lifted in order to terminate the Lease and regain possession of the Leased Premises.

14.      Finally, given that the schedules filed by the Debtor show that the Bankruptcy Estate has no assets, and the Affidavit of McGill that the Lease is above-market, the Bankruptcy Estate will be unable to satisfy the provisions of 11 U.S.C. §365(b)(2) that require it to cure defaults under the Lease, compensate McGill for its pecuniary losses, and provide adequate protection of future performance.

15.      Given the failure of the Bankruptcy Estate to protect the interests of McGill and the immediate threat caused by the unauthorized occupant in the Leased Premises, the exigent facts support the entry of an order authorizing the stay to be lifted to allow McGill to terminate the Lease and assert its contractual and state court remedies to regain possession of the Leased Premises.

16.     Pursuant to Local Rule 9013(G), McGill does not intend to file a separate memorandum of points and authorities and will rely solely upon the factual and legal matters set forth herein.

WHEREFORE, McGill Development Limited Partnership No. 3 prays the entry of an order:

a.     Lifting the automatic stay to allow it to proceed with its contractual and state law remedies, including the termination of the Lease and the eviction of the current occupant of the Leased Premises, and

b.     For such other and further relief as this court finds appropriate.

Dated: January 27, 2017              /s/ Madeline A. Trainor
                                     Madeline A. Trainor VSB# 18531
                                     REDMON, PAYTON & BRASWELL, LLP
                                     510 King Street, Suite 200
                                     Alexandria, VA 22314
                                     (703) 684-2000
                                     Attorneys for the Movant


## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2017, a copy of the foregoing Motion was mailed by first class mail, postage prepaid, to:

Stone's Cover Kitbar of Bel Air, LLC
10207 East Hunter Valley Road
Vienna, VA 22181

And by ECF, as permitted by the Local Rules and Standing Orders of this Court to:

Gregory H. Counts, Esquire
Tyler, Bartl, Ramsdell & Counts, PLC
300 N. Washington Street
Suite 202
Alexandria, VA 22314-4252

H. Jason Gold, Chapter 7 Trustee
Nelson Mullins Riley & Scarborough LLP
101 Constitution Avenue NW
Suite 90
Washington, DC 20001

Office of the U.S. Trustee, Region 4
115 S. Union Street, Suite 210
Alexandria, VA 22314


/s/ Madeline A. Trainor
Madeline A. Trainor